UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                              )
ANTHONY MUCCI,                )
        Plaintiff,            )
                              )
    v.                        ) C.A. No. 09-286 S
                              )
TOWN OF NORTH PROVIDENCE, by and )
through its Finance Director, )
Maria G. Vallee; WILLIAM J.   )
SHURICK, III, individually and in )
his official capacity; MICHAEL )
TAVAROZZI, individually and   )
in his official capacity; and )
DAVID TESSERIS, individually and )
in his official capacity,     )
        Defendants.           )
_____ )
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This suit arises from a confrontation between three North Providence police officers and Plaintiff Anthony Mucci. Mucci brought suit pursuant to 42 U.S.C. § 1983, alleging a claim under the Fourth Amendment to the United States Constitution and supplemental state law claims of negligence, assault, battery, false arrest, malicious prosecution, and unreasonable search and seizure. Defendants have moved for summary judgment on all claims. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I.  Background

Except where noted, the following facts are undisputed by the parties. On June 12, 2006, at approximately 1 a.m., Mucci called Northern Rhode Island Community Services (NRICS). Mucci told the NRICS director of counseling that he had a knife and planned to kill himself. After the telephone conversation ended, Mucci cut one of his wrists. The director of counseling reported Mucci's call to the police.

Officers Michael Tavarozzi, William Shurick, and David Tesseris of the North Providence Police Department responded to Mucci's apartment to investigate the report of a suicidal individual wielding a knife. Officer Tesseris carried a Taser. The officers positioned themselves around the entrance to the apartment and ordered Mucci to open the door. Mucci did not respond at first, but in time he complied. When Mucci opened the door, he was holding a knife to his neck. The officers twice ordered Plaintiff to drop the knife. Mucci yelled "No" in response to the commands. The officers ordered Plaintiff to drop the knife a third time and warned, "We'll Taser you." Plaintiff answered, "Okay."

The only factual dispute pertains to what happened next. Defendants contend that Mucci lowered the knife to his waist and moved forward in an aggressive manner. (Defs.' Statement of Undisputed Facts in Supp. of their Mot. for Summ. J. ¶ 9.)

2

Mucci disputes that he moved aggressively toward the officers. He contends he bent forward toward the officers in order to place the knife on the ground but never crossed the threshold of his apartment doorway. (Pl.'s Statement of Disputed Facts 1-2.) It is uncontroverted that when Mucci moved forward, Officer Tesseris deployed the Taser.

Mucci was later charged with resisting arrest and three counts of felony assault with a dangerous weapon. After a two-day jury trial in Rhode Island Superior Court in June 2007, a jury found Plaintiff not guilty on all charges. Just short of two years after his acquittal, Mucci filed this action in state court. Defendants removed the action to this Court and now move for summary judgment.

II. Discussion

    A. Legal Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact, thereby entitling the moving party to judgment as a matter of law. Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). A genuine issue of material fact exists when "a reasonable jury could resolve [a] point in favor of the nonmoving party," which supports judgment in his favor. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006)

3

(quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

B. Qualified Immunity

Officer defendants are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (quoting Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 526 (1st Cir. 2009)). To determine whether a defendant is entitled to immunity, the court inquires "(1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Estrada, 594 F.3d at 62-63 (quoting Maldonado v. Fontánes, 568 F.3d 263, 269 (1st Cir. 2009)). The second step is made up of two prongs: (1) "the clarity of the law at the time of the alleged civil rights violation" and (2) "whether, on the facts of the case, a reasonable defendant would have understood that his conduct violated the Plaintiffs' constitutional rights." Id. at 63 (internal citation and quotation marks omitted). Moreover, "[b]ecause qualified immunity is not merely a defense from liability but a defense from suit, courts are called upon to decide the issue of qualified immunity as early in the litigation as possible."

Petro v. Town of West Warwick ex rel. Moore, 770 F. Supp. 2d 475, 478 (D.R.I. 2011) (citing Morelli, 552 F.3d at 18).

In deciding the appropriateness of qualified immunity in the summary judgment context, "a court must proceed by first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Id. (internal quotation and citation omitted).

An officer who is entitled to qualified immunity under federal law is similarly immune from suit for the state-law equivalent of that claim under Rhode Island law. Estrada, 594 F.3d at 63 (citing Hatch v. Town of Middletown, 311 F.3d 83, 89-90 (1st Cir. 2002)).

1. False Arrest and Malicious Prosecution

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest and malicious prosecution claims because the officers had probable cause to arrest Mucci for assault.[1] Defendants further argue that, even if they did not have probable cause, they are shielded by qualified immunity.

---

[1] Defendants also make an argument that they were justified in detaining Mucci under their "community care taking function" and because they had reasonable suspicion. A police officer's community caretaking function justifies the officer's seizure of an individual "in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal

5

If the officers had probable cause to arrest, Mucci's claims of false arrest and malicious prosecution necessarily fall flat. See Horton v. Portsmouth Police Dep't, No. 2010-11-Appeal, 2011 WL 2177449, at *6 (R.I. June 6, 2011) ("When probable cause exists to initiate a proceeding, a claim of malicious prosecution must fail; likewise, when probable cause exists to arrest, a claim of false arrest must fail as well." (citing Hill v. R.I. State Emps.' Ret. Bd., 935 A.2d 608, 613 (R.I. 2007); Henshaw v. Doherty, 881 A.2d 909, 919 (R.I. 2005)). Probable cause to arrest exists where "the facts and circumstances within the officer's knowledge at the time of arrest, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person's belief that a crime has been committed and that the suspect committed the crime." Ferreira, 568 F. Supp. 2d at 206 (quoting Winn v. Collins, 723 A.2d 798, 799 (R.I. 1998)). In determining whether there was probable cause, the Court considers the "totality of the circumstances" and looks to only the officers' knowledge at the time of the arrest. Id. (citing United States v. McFarlane, 491

---

activity." Ferreira v. City of E. Providence, 568 F. Supp. 2d 197, 209 (D.R.I. 2008) (quoting United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993)). However, Mucci challenges only his arrest, not his pre-arrest detainment, and so the propriety of the officers' purported exercise of their community caretaking function and Mucci's pre-arrest detainment need not be addressed by the Court. (See Mem. of Law in Supp. of Pl.'s Obj. to Defs.' Mot. for Summ. J. 3 n.1.)

F.3d 53, 56 (1st Cir. 2007)). In a suit for damages under § 1983, the jury determines the material facts underlying the defendant's actions.[2] B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984) ("[W]hether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case, a question to be resolved by the trier of fact.").

Here, the question is whether, viewing the evidence in the light most favorable to Mucci, a reasonable officer would have believed that Mucci had committed or was committing felony assault.[3] In Rhode Island, assault is defined as "a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm." State v. Cardona, 969 A.2d 667, 673 (R.I. 2009) (quoting Broadley v. State, 939 A.2d 1016, 1021 (R.I. 2008)). Under

---

[2] In a § 1983 suit, the jury is charged with "finding the circumstances under which the defendant acted" and the court determines, on those findings, whether the defendant had probable cause. Restatement (Second) Torts § 673, cmt. e (2011). Therefore, if the material facts are undisputed, probable cause is solely a question for the court; otherwise, the jury must determine the facts surrounding the defendant's actions, and the court must apply the law of probable cause to those facts. Id.; Horton v. Portsmouth Police Dep't, 22 A.3d 1115, 1123 (R.I. 2011) ("[T]he existence of probable cause can sometimes be determined as a matter of law; and therefore, in appropriate situations, that issue can properly be the subject of a motion for summary judgment." (emphasis added)(quoting Henshaw v. Doherty, 881 A.2d 909, 917 (R.I. 2005)).

[3] Defendants do not suggest that there was probable cause for resisting arrest.

7

Rhode Island General Laws § 11-5-2(a), an assault with a dangerous weapon (for example, a knife) is a felony assault.

Viewing the facts in the light most favorable to Mucci, it is conceivable that a jury could conclude that the officers did not have probable cause to arrest Mucci; that is, a jury could find Mucci's forward movement was not of a threatening nature and it would not incite reasonable fear of bodily harm. Mucci avers that his actions were not aggressive; there are no facts suggesting that the officers knew Mucci to be violent to others or that he verbally threatened the officers; and Mucci's "okay" could be read as a clear sign of capitulation. Therefore, there exists a genuine factual dispute that may not be resolved on summary judgment.

With respect to the officers' request for qualified immunity on these claims, the Court must determine whether, in light of these facts, any reasonable officer would have known his actions infringed upon Mucci's constitutional rights. Given the material factual dispute here, the Court defers judgment on qualified immunity. See Ringuette v. City of Fall River, 146 F.3d 1, 6 (1st Cir. 1998) ("Something of a 'black hole' exists in the law as to how to resolve factual disputes pertaining to qualified immunity when they cannot be resolved on summary judgment prior to trial. To avoid duplication, judges have

sometimes deferred a decision until the trial testimony was in or even submitted the factual issues to the jury.").

### 2. The Officers' Use of Force

Defendants also move for summary judgment on Mucci's claims of excessive force and assault and battery, arguing that Mucci's refusal to obey commands and his movement toward the officers justified the force they used. Defendants also contend they are entitled to qualified immunity as to these claims.

An officer's right to detain or arrest a person "carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). But when an officer exerts an unreasonable level of force during the seizure, the Fourth Amendment is implicated. Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (citing Graham, 490 U.S. at 394-95). To assess the reasonableness of the force employed, the Court looks to "three non-exclusive factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Raiche, 623 F.3d at 36 (quoting Graham, 490 U.S. at 396). This is an objective inquiry, unconcerned with an officer's "subjective intent or motivation." Raiche, 623 F.3d at 36.

In determining whether defendant officers are entitled to qualified immunity, the Court must be mindful that though "excessive force is by definition unreasonable force, 'reasonable people sometimes make mistaken judgments, and a reasonable officer sometimes may use unreasonable force.'" Mlodzinski v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) (quoting Morelli, 552 F.3d at 24). In these circumstances, "qualified immunity gives an officer the benefit of a margin of error." Id. "Immunity will not issue if 'it is obvious that no reasonably competent officer would have concluded' that an action was lawful, but if 'officers of reasonable competence could disagree' on the lawfulness of the action, defendants are entitled to immunity." Mlodzinski, 648 F.3d at 33 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The First Circuit has only once addressed the question of whether deploying a Taser constituted excessive force. In Parker v. Gerrish, 547 F.3d 1 (1st Cir. 2008), the First Circuit held that the evidence presented at trial was sufficient to support a finding of excessive force where an officer deployed a Taser. Id. at 11. Marshalling the Graham factors, the court concluded that driving under the influence did not present a risk to the arresting officer; the jury could have concluded that Parker's hand movement was not threatening; and the jury could have found that Parker did not resist arrest. Id. at 9-

10. Under those facts, the court held that "it was not unreasonable for the jury to find [the officer's] use of the Taser to be excessive." Id. at 11.

The First Circuit distinguished Parker from Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004), on the grounds that the arrestee in Draper had been "hostile, belligerent, and uncooperative," and, like the present case, deployment of the Taser was a reasonable means by which the officer could ensure that "a tense and difficult situation" did not escalate into "a serious physical struggle." Parker, 547 F.3d at 11 (quoting Draper, 369 F.3d at 1278). Notably, the First Circuit did not address the defendants' qualified immunity argument in Parker because the defendants had waived the argument by failing to raise it before the district court. Id. at 13.

The Court need not decide whether the instant case raises a genuine issue of material fact with regard to whether the use of a Taser constituted excessive force, because it is clear that Defendants are immune from suit. That is, viewing the facts in the light most favorable to Mucci, a reasonable officer in Officer Tesseris's shoes could have concluded that he was not violating Mucci's constitutional rights in deploying the Taser. Officer Tesseris employed non-deadly force[4] in "tense, uncertain,

---

[4] Courts have categorized the Taser as "more than a non-serious or trivial use of force but less than deadly force . . .

and rapidly evolving" circumstances to subdue Mucci in an attempt to secure the safety of all parties and to avoid the need for deadly force. Graham, 490 U.S. at 397; see also Draper, 369 F.3d at 1278 (holding that deploying a Taser did not constitute excessive force where the plaintiff was moving around, belligerent, agitated, and noncompliant to officer commands); Ewolski v. City of Brunswick, 287 F.3d 492, 508 (6th Cir. 2002) (emphasizing the propriety of deploying a Taser when its use obviates the need to use lethal force); Russo v. City of Cincinnati, 953 F.2d 1036, 1044-45 (6th Cir. 1992) (holding that the plaintiffs had failed to show that clearly established law rendered the officer's actions unconstitutional where the officers knew the suspect to be potentially homicidal, the suspect was wielding a knife, and he made threatening statements).

Applying the Graham factors, it is plain that the safety of Mucci and the officers was paramount. While Mucci arguably was not committing a crime or resisting arrest when the officer deployed the Taser, Mucci does not challenge his initial seizure in accordance with the officers' community caretaking function.

---

." Henry v. Purnell, No. 08–7433, 2011 WL 2725816, at *11 (4th Cir. July 14, 2011) (quoting Mattos v. Agarano, 590 F.3d 1082, 1087 (9th Cir. 2010)); see also McKenney v. Harrison, 635 F.3d 354, 362 (8th Cir. 2011) (same); cf. Cavanaugh v. Woods Cross City, 625 F.3d 661, 665 (10th Cir. 2010) ("Although Tasers may not constitute deadly force, their use unquestionably 'seizes' the victim in an abrupt and violent manner.").

12

The officers knew Mucci was emotionally disturbed and a threat to himself; was wielding a deadly weapon; and was not responding to the officers' directives. The situation had the potential to escalate quickly and a reasonable officer could have believed he needed to gain control of the situation and seize Mucci <u>before</u> Mucci hurt himself or one of the officers. The officers' options were limited in that moment, and the Court cannot conclude that a reasonable officer, after ordering Mucci three times to put down the knife, would have known he was violating Mucci's constitutional rights by deploying the Taser. Therefore, the officers are entitled to qualified immunity on the claims of excessive force, assault, and battery.[5]

3. Negligence

The Complaint pleads claims of negligence and excessive force grounded in the officers' alleged unreasonable use of force, namely, the deployment of the Taser. Defendants argue that summary judgment should enter in their favor on the negligence claim because it effectively merges with the excessive force claim. They merge, according to Defendants, because (1) a person cannot commit an intentional tort

---

[5] Because Defendants are entitled to qualified immunity on the excessive force claim, they are also entitled to immunity from suit on the state law assault and battery claims. <u>See</u> <u>Raiche v. Pietroski</u>, 623 F.3d 30, 40 (1st Cir. 2010); <u>Santoni v. Potter</u>, 369 F.3d 594, 603 (1st Cir. 2004).

13

negligently and (2) both inquiries focus on the reasonableness of an officer's actions.

The overwhelming weight of authority supports Defendants' view. In short, a plaintiff may not advance claims of excessive force and negligence predicated on identical facts. <u>Hall v. Lanier</u>, 708 F. Supp. 2d 28, 31-32 (D.D.C. 2010). Rather, to maintain claims of both negligence and excessive force, a plaintiff must allege at least one fact that is distinct in one claim from the other. <u>Id.</u>; see also <u>Whitfield v. Tri-Metro. Transp. Dist.</u>, Civil No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009) (common-law negligence claim must be based on facts distinct from those giving rise to § 1983 claims); <u>Salter v. McNesby</u>, No. 3:06cv110/MCR, 2007 WL 2459246, at *21 (N.D. Fla. Aug. 24, 2007) (in Florida, a negligence claim must pertain to something distinct from the actual force applied during the seizure because Florida does not permit a cause of action for negligent use of excessive force); <u>Brooks v. District of Columbia</u>, Civil Action No. 05-362(GK), 2006 WL 3361521, at *5 (D.D.C. Nov. 20, 2006) (holding that plaintiff needs at least one distinct fact to support claims for both negligence and excessive force). But see <u>Merman v. City of Camden</u>, Civil Action No. 07-cv-3449 (NLH) (KMW), 2010 WL 2521422, at *13 (D.N.J. June 15, 2010) (allowing a plaintiff to simultaneously

advance negligence and excessive force claims).[6]  Accordingly, summary judgment is granted in Defendants' favor on the negligence claim.

### 4. Municipal Liability

The basis of Mucci's claim against the Town of North Providence is the Town's purported respondeat superior liability for the negligent acts of the individual officers. See Saunders v. State, 446 A.2d 748, 752 (R.I. 1982) (holding that the state could be held liable under the doctrine of respondeat superior for its employee's negligence).  Because Mucci's negligence claim no longer stands, the Court also grants summary judgment for Defendants on the municipal liability claim.

## III. Conclusion

For the reasons stated herein, Defendants' motion for summary judgment is GRANTED with respect to the claims of excessive force, assault, battery, negligence, and municipal

---

[6] Mucci argues, to no avail, that Rule 8 of the Federal Rules of Civil Procedure allows for alternative pleading, even where the claims are inconsistent. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). This may be true at the motion to dismiss stage, but at the summary judgment stage, these claims effectively merge, and the plaintiff must choose which one he wishes to press. See Rodriguez v. City of Portland, Civil No. 09-850-KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009) (holding that a party may plead in the alternative negligence and constitutional claims under § 1983, but a party may not advance both negligence and constitutional claims at the summary judgment stage).

liability, and Defendants' motion is DENIED with respect to the claims of false arrest and malicious prosecution.

The Court reserves decision on whether to exercise supplemental jurisdiction on the state law claims now that the federal law claims have been dismissed. See 28 U.S.C. § 1367(c) (stating that a district court may decline to exercise supplemental jurisdiction over an action when the court has dismissed the claims over which it has original jurisdiction); see also Brown v Am. Honda (In re New Motor Vehicles Canadian Export Antitrust Litig.), 522 F.3d 6, 16 (1st Cir. 2008) (stating that a "district court should consider 'the totality of the attendant circumstances,' including considerations of judicial economy, fairness to the parties, and the nature of the applicable state law" when deciding whether it should continue to exercise supplemental jurisdiction over state damages claims where the federal claims were dismissed) (internal quotation marks and citation omitted). A conference will be scheduled with counsel to discuss this question.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: October 3, 2011